IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS R. FERRETTI,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 24-CV-2865 |
| RYAN EMRICK, *et al.*,<br>    Defendants. | :<br>:<br>: |

<u>**MEMORANDUM**</u>

YOUNGE, J.                                                                                     DECEMBER 3, 2024

       In a prior Memorandum and Order, the Court granted Thomas R. Ferretti, a prisoner at Lehigh County Prison ("LCP"), leave to proceed *in forma pauperis* and dismissed in part the Complaint he filed.[1] *Ferretti v. Emrick*, No. 24-2864, 2024 WL 4426145 (E.D. Pa. Oct. 4, 2024) ("*Ferretti I*"). All claims against Coplay Police and all HIPAA claims were dismissed with prejudice because they were not plausible. The following claims were dismissed without prejudice: (1) harassment claims based on employment status, as well as any collective harassment claim; (2) Fair Credit Reporting Act claims and other unspecified banking laws claims; (3) claims about frivolous criminal complaints; (4) claims about Defendant Ryan Emrick transporting Ferretti from court to LCP; (5) claims about contacting Ferretti's probation officers; and (6) Ferretti's request for preliminary injunctive relief. All claims asserted by Ferretti on behalf of his girlfriend Jane Chase were also dismissed without prejudice. At that time, the Court was prepared to serve Ferretti's sexual assault claim against Emrick for a responsive pleading. *Id*. at *5-6. However, Ferretti was provided an opportunity to choose whether to

---

[1] Ferretti has filed another motion to proceed *in forma pauperis*. (ECF No. 13.) In the Order that follows, the additional motion will be denied as moot since Ferretti has already received this relief.

proceed only on that claim or file an amended complaint to attempt to cure the defects the Court identified in his other claims. Ferretti filed an Amended Complaint on November 5, 2024 (ECF No. 12). For the following reasons, the sexual assault and FCRA claim will be served for a responsive pleading and the balance of the claims in the Amended Complaint will be dismissed.

I.     **FACTUAL ALLEGATIONS**[2]

In the Amended Complaint, Ferretti again names current Coplay Police Chief Ryan Emrick, but in his official capacity only, and also names the City of Coplay, Lehigh County, and the Commonwealth of Pennsylvania, because, he claims, Emrick is a "state employee" and these governmental entities were collectively his alleged employer. (Am Comp. at 2-3, 13.) He asserts violations of his First, Fourth, and Fourteenth Amendment rights based on Emrick allegedly sexually assaulting Ferretti and making sexual comments. (*Id*. at 3-4.) Emrick also filed "criminal complaints/citations" in violation of Ferretti's constitutional rights based upon knowledge that Ferretti and Chase "just finished having sexual intercourse." (*Id*. at 4.) Apparently, this occurred in a parking lot outside the local district court in East Whitehall, Pennsylvania, and Emrick filed the complaint on behalf of Jane's mother, who worked as a secretary for the Catholic Church. (*Id*. at 19; 4-5.) Ferretti alleges that Emrick violated his rights by sexually assaulting him on October 27, 2023 when he pressed his penis into Ferretti's buttocks and asking "do you want this?" while Ferretti was handcuffed and Emrick held him

---

[2] Ferretti filed his Amended Complaint using the Court's form available to unrepresented litigants to file claims, to which he added nineteen handwritten pages. The Court deems the entire submission to constitute the Amended Complaint, for which the Court adopts the sequential pagination assigned by the CM/ECF docketing system. The Court will not repeat allegations Ferretti makes discussing claims that have already been dismissed from this case concerning HIPAA and claims he sought to bring on behalf of others. (*See* Am Compl. at 14-17.) The punctuation, spelling, and capitalization of certain quotations have been cleaned up.

against the side of a police car.³ (*Id*. at 4-5, 29-30.) Emrick allegedly also viewed explicit photos and video of Ferretti and Chase prior to this incident. (*Id*. at 30.) Ferretti seeks money damages equal to the amount of the citations Emrick wrote against him, and additional amounts. (*Id*. at 5.)

In the handwritten portion of his Amended Complaint, Ferretti asserts that Emrick harassed and retaliated against him due to his employment status and violated his First Amendment rights.⁴ (*Id*. at 17.) Apparently, this is based on the aftermath of a sexual encounter with Chase at Ferretti's residence when Chase left her purse and phone behind and Ferretti brought them to her home. (*Id*.) Chase's mother told Ferretti to leave, but he remained outside of the house seated in his car waiting for Chase. (*Id*.) Her mother called the Coplay Police, Emrick arrived at the scene, and asked Ferretti about his employment – "Do I work?" (*Id*. at 18.) Ferretti thought this was an odd question since it was the first time the two had met. (*Id*.)

---

³ The Court previously determined that this claim would be served for a responsive pleading. *Ferretti I*, 2024 WL 4426145, at *6 (citing *E.D. v. Sharkey*, 928 F.3d 299 (3d Cir. 2019) (holding that there is a clearly established right "not to be sexually assaulted by a state employee while in confinement")); *see also Ricks v. Shover*, 891 F.3d 468, 473 (3d Cir. 2018) (holding that sexual abuse and harassment violate an inmate's rights under the Eight Amendment, which prohibits cruel and unusual punishment).

⁴ In the handwritten portion of Ferretti's submission, he provides rambling and difficult to understand allegations concerning several different incidents, often without stating when they occurred. He states that he intends to file a separate civil rights suit about prison conditions and claims he was sexually assaulted by another inmate. (*Id*. at 7.) He also states that Emrick is a "state employee," and mentions Coplay Officer Wayne Green and Coplay Ex-Chief of Police Vincent Genovese, but he has not named these individuals in the caption of his Amended Complaint or listed them as Defendants. (*Id*. at 13, *see also id.* at 1, 2-3.) While unclear, the Court understands Ferretti to bring claims against Green and Genovese as well as Emrick in this case since he says he intends "to assert claims against each of the three officers named above in their official capacities and in addition assert claims to the governing body of which they were employed. Each of the officers named were and are currently state employees." (*Id*. at 13.) Accordingly, the Clerk of Court will be directed to add Green and Genovese as Defendants as well as the governmental entities listed in the caption of the Amended Complaint.

Ferretti believes that Chase's mother was aware of his "employment status," which he describes in the Complaint as landscaping and power washing self-employment, and that she disclosed it to Emrick.  (*Id*.)  Emrick also asked Ferretti what business he had in Coplay, and Ferretti explained that he was trying to return Chase's purse and phone, but her mother told him to leave.  (*Id*.)  Ferretti also told Emrick that he and Chase had engaged in sexual intercourse, are dating, and are on good terms.  (*Id*.)  After Chase recovered her property, Emrick allegedly contacted an officer from North Catasauqua, Pennsylvania because his own vehicle was not equipped with a computer, in order to check the status of Ferretti's driver's license.  (*Id*.)  He then told Ferretti that he was free to go.  (*Id*. at 18-19.)  At some point thereafter, Emrick issued a summons and complaint to Ferretti but allegedly never mailed them to him, leading to a warrant for failure to pay fines.  (*Id*. at 19.)  Ferretti alleges that Coplay police have a history of writing criminal complaints against him based upon "another person's testimony, and mailing or holding onto such complaints" so that he would have no knowledge of them, and so that warrants would issue.  (*Id*.)  When he complained about this conduct, the Northampton Borough Police refused to create an incident report based on his information, while they do take reports based on other people's "verbal testimony" about Ferretti.  (*Id*.)  Ferretti asserts that his First Amendment rights were violated since he had told Emrick that he and Chase had engaged in the constitutionally protected conduct of extramarital sexual intercourse, and Emrick issued criminal citations against him.  (*Id*. at 19-20.)  He asserts in conclusory fashion that this adverse action was sufficient to deter a person of ordinary firmness from exercising his "constitutional right to my freedom of religion" to engage in "sexual immorality," and his protected conduct was a substantial or motivating factor for Emrick's adverse action.  (*Id*. at 20.)

4

Ferretti next asserts that Emrick obtained a copy of his "Lexus Nexus" credit report and motor vehicle records, which he claims are "not commonly obtained by law enforcement officials," in violation of the Fair Credit Reporting Act. (*Id*. at 21.) He did not consent to this and, he asserts, Emrick had no statutory purpose to obtain the credit report.[5] (*Id*.) He also asserts that other criminal complaints, motor vehicle, and other civil citations against him, constituting malicious prosecution. (*Id*. at 22.) In one instance, after Ferretti was released from Lehigh County Jail, he went to a magisterial district court in Whitehall to obtain discovery and was told he would have to get it from Coplay Police headquarters. (*Id*. at 23.) Upon arriving there, he was handcuffed and detained by Defendant Genovese, who "interpreted" Ferretti's presence as "police contact" and brought him back to Lehigh County Jail stating he was in violation of his probation. (*Id*.) During that incident, Ferretti claims that Genovese also sexually assaulted him by putting his hand down his own pants and touching his genitals before giving the handcuffed Ferretti a cup of water to drink and touching his lips in the process.[6] (*Id*.)

With regard to his malicious prosecution claim, Ferretti asserts that he has a current case where he is alleged to have stalked and harassed Jane Chase's father, but claims he never had contact with the man and there is no evidence to support the charges. (*Id*. at 24.) He alleges that he went to pick up Chase but her sister, Michele Weber, who was intoxicated, and Weber's

---

[5] Based on this allegation that Emrick did not have a valid purpose to obtain a credit report, the Court will direct service of the FCRA claim. *See Kirtz v. Trans Union LLC*, 46 F.4th 159, 165 n.4 (3d Cir. 2022), *aff'd sub nom. Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024) ("'[T]he FCRA only permits credit reporting agencies to furnish credit reports in six circumstances and no other.'").

[6] Because this allegation is sufficient to allege a plausible sexual assault claim based on the touching of Ferretti's lips, it will be served for a responsive pleading. *See Ricks*, 891 F.3d at 475 (stating that the two elements required for an Eighth Amendment claim involving sexual assault are "the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official must have a culpable state of mind.").

husband were already present to pick her up. Weber allegedly assaulted Ferretti by hitting him with her phone, leading Ferretti to call the police. (*Id*. at 24-25.) When Chase left with her sister, Ferretti shouted at the police officer to arrest Weber but, the next day, Ferretti learned that Chase and Weber filed a criminal complaint against him. (*Id*. at 25.) He asserts a malicious prosecution claim against Emrick and Genovese because they bullied Chase to file the charges, which he identifies by Citation Number CY230728141, and to obtain a protection from abuse order against him under false pretenses because Emrick and Genovese are friendly with Weber. (*Id*. at 25-26.) While not completely clear, he appears to assert that the incident with Chase's father and with Weber that form the basis of his malicious prosecution claim, allegedly occurring on July 28, 2023, were related to Ferretti's act of filing the complaint in *Ferretti v. Northampton Cnty. Jail*, No. 21-3530 (E.D. Pa.) – which records show occurred on August 6, 2021 – because the calendar dates are similar. (*Id*. at 26.) He claims the Coplay Police have "a history of using dates that are important to me to write and issue criminal complaints against me," including dates referenced in that prior case, his brother's birthday, and his parent's wedding anniversary. (*Id*. at 27.)

     Ferretti also again asserts he was improperly transported to LCP by a Coplay Police officer, possibly Emrick, when a sheriff's officer should have performed that task. (*Id*. at 27-28.) While any connection to the jail transport by Emrick is unclear, as the basis for this claim he appears to allege that Defendant Green issued a criminal complaint against him, but he committed no criminal acts and was unable to defend himself because he was denied discovery in the case. (*Id*.) He also alleges that the criminal complaint was mailed to an incorrect address and returned by the United States Postal Service as undeliverable, resulting in Emrick and Green seeking an arrest warrant. (*Id*. at 28.) He asserts that Green knew he was a patient at

Muhlenberg Hospital, since he transported Ferretti from the Hospital to LCP on October 11, 2023. (*Id.*) He was released on unsecured bail and told to return to court on October 27. When he went to court, he learned he was supposed to have reported to pretrial services in the interim and had failed to do so, resulting in his bail being increased to $25,000 and his being returned to LCP. (*Id*. at 28-29.)

Finally, Ferretti reasserts a claim based on Emrick's communication with his probation officer after he was released from jail on December 26, 2023. (*Id*. at 30-31.) While again unclear, he appears to assert that the Lehigh County Probation Department contacted Coplay Police, Ferretti does not know why the contact was made, and alleges that Emrick withheld this information from him. (*Id*.) He also claims that Emrick was the "point of contact" for Ferretti to receive documents he should have received when he was arrested.[7] (*Id*.) Despite Ferretti's claim that his contact with Coplay Police was "voluntary and of civil business," Emrick attempted to detain him "with the intentions of again harassing [him]." (*Id*. at 32.)

A review of public records indicates that Ferretti was convicted of harassment and terroristic threats in Lehigh County on December 1, 2017 and sentenced to a 3-12 month term. *Commonwealth v. Ferretti*, CP-39-CR-0000065-2018 (C.P. Lehigh). Emrick is listed as the arresting officer. *Id*. Ferretti was also convicted of defiant trespass on May 6, 2020 and sentenced to 3-6 months. *Commonwealth v. Ferretti*, CP-39-CR-0001511-2020 (C.P. Lehigh). Genovese is listed as the arresting officer. *Id*. He was again convicted of defiant trespass on

---

[7] In this portion of his Amended Complaint, Ferretti also mentions that he contacted the Northampton County Probation Department because one of his arrests occurred while he was taking a required "online driving course mandated by Northampton probation from years previous to complete this 12.5 hour course online in 10/27/23." (*Id*. at 31.) When he was released, he contacted Northampton probation to finish the course. (*Id*.) It is unclear how this relates to the allegations concerning the Lehigh County Probation Department.

November 10, 2022, but no further penalty was imposed. *Commonwealth v. Ferretti*, CP-39-CR-0001547-2022 (C.P. Lehigh). A non-defendant Coplay police officer is listed as the arresting officer. (*Id.*) Ferretti was subsequently convicted of misdemeanor harassment and sentenced to 45 days to 12 months in *Commonwealth v. Ferretti*, CP-39-CR-0000183-2024 (C.P. Lehigh). This conviction arose out of Citation Number CY230728141, and Green is listed as the arresting officer. *See id.*, MJ-31107-CR-0000406-2023 (M.J. Lehigh). The docket reflects that Ferretti is currently incarcerated on this conviction and also indicates that Ferretti's probation was revoked based on this charge on March 20, 2024. *Id*. On August 26, 2024, the Court entered an order denying Ferretti's motion for parole indicating on the docket that he shall remain incarcerated until his maximum date of December 11, 2024.

Ferretti also pled guilty in Northampton County on August 5, 2020 to charges of criminal mischief and driving under the influence of a controlled substance, for which he was sentenced to a term of 90 days to 12 months and a 12 month term of probation, and his driver's license was suspended for 12 months. *Commonwealth v. Ferretti*, CP-48-CR-0000061-2020 (C.P. Northampton). The public docket indicates that he received probation violation hearings on June 11, 2021, after which he was apparently reincarcerated, as well as on September 1, 2021. *Id*. He also pled guilty to summary offenses in Northampton County on December 20, 2021 and January 10, 2022 for disorderly conduct, defiant trespass, and littering. *Commonwealth v. Ferretti*, CP-48-SA-0000198-2021, CP-48-SA-0000303-2021 (C.P. Northampton).

## II.   STANDARD OF REVIEW

Because the Court has granted Ferretti leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. The Court must determine whether the Amended Complaint contains "sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Ferretti is proceeding *pro se*, the Court construes the allegations of the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239, 245 (3d Cir. 2013)).

### III. DISCUSSION

Ferretti asserts constitutional claims under 42 U.S.C. § 1983 and seeks money damages. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A. Claims Against Municipalities and Official Capacity Claims

Ferretti names both the City of Coplay and Lehigh County as Defendants, and names Emrick, Green, and Genovese in their official capacities only. To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must

identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.* Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

      Ferretti does not identify a municipal policy or custom of either the City of Coplay or Lehigh County that caused a constitutional violation. Nor does he allege facts from which it can plausibly be inferred that a municipal policy or custom of the City of Coplay or Lehigh County was the proximate cause of his injuries. Accordingly, the claims against these Municipal Defendants will be dismissed. To the extent Defendants Emrick, Green, and Genovese are sued in their official capacities, the claims are dismissed as duplicative of the implausible claims against the Municipal Defendants, and fail on the merits for the same reasons. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."); *see also Kentucky v.*

10

*Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). However, because Ferretti may not have understood the implication of naming these Defendants in their official capacities only, the Court will liberally construe the Complaint to assert individual capacity claims against them as well. *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Philadelphia*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

   **B.**  **Claims Against the Commonwealth**

  The claim for money damages against the Commonwealth of Pennsylvania must also be dismissed. States are not considered "persons" for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Commonwealth of Pennsylvania has not waived that

immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Accordingly, the claims for money damages Ferretti seeks to assert against the Commonwealth of Pennsylvania may not proceed.

        **C.     First Amendment Retaliation and Harassment Claims**

Ferretti again asserts that Emrick harassed him due to his "employment status" since he asked of Ferretti "Do I work?" and what business he had in Coplay. (Am. Compl at 18.) He also makes various allegations of retaliation and harassment based on Emrick arresting him after he had engaged in the asserted constitutionally protected conduct of having sexual relations with Chase in a parking lot or perhaps at his residence.

As the Court previously explained to Ferretti, in order to state a plausible First Amendment retaliation claim, a plaintiff must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *Ferretti I*, 2024 WL 4426145, at *3 (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*)). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson v. Yerke*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422.

Ferretti's original allegation that Emrick harassed him due to his "employment status" was found to be too vague and undeveloped to proceed. *Ferretti I*, 2024 WL 4426145, at *4. His renewed allegation suffers from the same defect. While he adds in the Amended Complaint

that Emrick also asked him what "business" he had in Coplay when Emrick was called to Chase's home by her mother, Ferretti does not allege an act of retaliation or harassment by Emrick based on constitutionally protected conduct. Rather, inconsistent with any claim of harassment due to his employment status, he alleges that Emrick was called to the scene by Chase's mother after she told him to leave and remained at the scene sitting in this car.

The claim that Emrick harassed or retaliated against Ferretti because of Ferretti's relationship with Chase is also not plausible. He asserts that Emrick wrote "criminal complaints/citations" the first time they interacted with each other because Ferretti and Chase had sexual relations and upset her mother. (Am. Compl. 17-21). It appears that the allegation relates to Ferretti's arrest and subsequent conviction in *Commonwealth v. Ferretti*, CP-39-CR-0000065-2018 (C.P. Lehigh) for harassment and making terroristic threats, since records show that Emrick was the arresting officer and it is the first public record indicating an interaction between Ferretti and Emrick. Because Ferretti does not allege plausibly the absence of probable cause with regard to this arrest, he cannot state a plausible retaliatory arrest claim. *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019) (stating that the presence of probable cause should generally defeat a First Amendment retaliatory arrest claim).

While included in the portion of the Amended Complaint where Ferretti describes his transportation to LCP, Ferretti may also be alleging a retaliatory arrest claim based on Defendant Green's issuing a criminal complaint against him, when he asserts that (1) he committed no criminal acts, (2) was unable to defend himself because he was denied discovery in the case, and (3) his address was incorrect and he did not receive court papers, resulting in an arrest warrant. (Am. Compl. at 27-28.) This claim is also not plausible because Ferretti does not allege facts to show that he was engaged in constitutionally protected conduct that was a substantial or

13

motivating factor for Green's act. Moreover, the criminal complaint arising from this time period, and for which Green was the arresting officer, also resulted in Ferretti's conviction, that time for misdemeanor harassment. *See Commonwealth v. Ferretti*, CP-39-CR-0000183-2024 (C.P. Lehigh). Because he does not allege plausibly the absence of probable cause with regard to this arrest, Ferretti cannot state a plausible retaliatory arrest claim against Green either.[8] *Nieves*, 587 U.S. at 405.

### D. Malicious Prosecution Claims

Ferretti reasserts malicious prosecution claims that were previously dismissed because he failed to provide any facts to support them, specifically, any facts about an arrest, the disposition of any charges, and why the charges were malicious. *Ferretti I*, 2024 WL 4426145, at *5. In the Amended Complaint, he alleges that the Defendants filed several frivolous criminal complaints, motor vehicle, and other civil citations against him, constituting malicious prosecution. (Am. Compl. at 22-29.) In one instance for which he does not specify a date, he claims that after he was released from LCP, he went to a magisterial district court in Whitehall to obtain discovery and was told he would have to get it from Coplay Police headquarters. (*Id*. at 23.) Upon arriving there, he was handcuffed and detained by Defendant Genovese, who "interpreted" Ferretti's

---

[8] Ferretti may also be attempting to assert a retaliation claim based on communications between his probation officer and Emrick after he was released from jail on December 26, 2023. (Am. Compl. at 30-31.) While again unclear, he appears to assert that the Lehigh County Probation Department contacted Coplay Police when Ferretti was released from jail on December 26, 2023, but Emrick withheld this communication from him for an unknown reason. (*Id*.) Despite Ferretti's claim that his contact with Coplay Police was "voluntary and of civil business," he asserts both that the Lehigh County Probation Department was "trying to capture [him]" because of his contact with police, and that Emrick attempted to detain him "with the intentions of again harassing [him]. (*Id*. at 32.) These allegations also fail to state a plausible claim since they are undeveloped and conclusory and Ferretti does not allege he was engaged in constitutionally protected conduct.

presence as "police contact" and brought him back to LCP stating he was in violation of his probation. (*Id.*) This claim appears to reference charges for which Ferretti was arrested by Genovese for defiant trespass, and for which he was convicted on May 6, 2020 and sentenced to 3-6 months. *Commonwealth v. Ferretti*, CP-39-CR-0001511-2020 (C.P. Lehigh).

Ferretti also asserts malicious prosecution with regard to a "current" case, referencing a docket number of "0183-2024" and Citation Number CY230728141, where he is alleged to have stalked and harassed Jane Chase's father, and Chase's sister filed charges against him. (Am. Compl. at 26.) This is an apparent reference to his conviction for misdemeanor harassment, for which he was sentenced to 45 days to 12 months, in *Commonwealth v. Ferretti*, CP-39-CR-0000183-2024 (C.P. Lehigh). He was arrested on this charge by Defendant Green. *Id.* The docket reflects that Ferretti pled guilty on December 26, 2023 and his conviction remains valid. *Id*.

To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022). A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim. *Chiaverini*, 602 U.S. at 562 ("The question here is

15

whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . . Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's charge by charge.). A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.").

Public records verify that Ferretti was convicted on the charges for which he was prosecuted by the Defendants in these two incidents, those convictions remain valid, and the charges were not terminated in his favor. Accordingly, his malicious prosecution claims based on these arrests are not plausible and will be dismissed.

### E. Transporting Ferretti to LCP

The Court previously dismissed Ferretti's claim based on allegations that Emrick transported Ferretti to LCP, thereby allegedly overstepping his duties because a sheriff's officer should have done the transport. The claim was dismissed because Ferretti failed to explain why he was detained, the circumstances under which he was brought to LCP, and why it violated Ferretti's constitutional rights to be transported by Emrick, rather than a sheriff's officer. *Ferretti I*, 2024 WL 4426145, at *5. Ferretti again asserts he was improperly transported to LCP by Coplay Police when a sheriff's officer should have performed that task. (Am. Compl. at 27-28.) While he makes allegations about being charged for offenses of which he was innocent and that he was prevented from defending himself, he fails to explain how those allegations show

16

plausibly that his civil rights were violated because he was transported by a police officer, rather than a sheriff's officer. Accordingly, this claim will again be dismissed.

### F. Contacting Probation Officer

Finally, Ferretti's claim based on Emrick's communication with his probation officer after he was released from jail on December 26, 2023 will be dismissed. The original claim was dismissed because it was undeveloped and Ferretti was provided an opportunity to flesh out his claim. *Ferretti I*, 2024 WL 4426145, at *6. However, he again fails to allege facts to indicate a basis for a plausible constitutional violation. He asserts in the Amended Complaint only that the Lehigh County Probation Department contacted Coplay Police when Ferretti was released from jail on December 26, 2023, and that Emrick withheld this information from him. While he also asserts that Emrick was the "point of contact" for Ferretti to receive documents he should have received when he was arrested, he does not explain how Emrick violated his rights. In sum, the Court cannot discern any basis for a claim based on this allegation.

### G. Preliminary Relief

The Court previously denied Ferretti's request for a protection from abuse order against Emrick, concluding that, to the extent this could be interpreted as a request for preliminary injunctive relief under Fed. R. Civ. P. 65, the fact that Ferretti is incarcerated made it highly unlikely that the one-time alleged sexual assault would be repeated. *Ferretti I*, 2024 WL 4426145, at *6. Ferretti reasserts this requested relief asserting that he is soon to be released from LCP, will be living in Coplay, will have to conduct "police business," and wants "to be reassured" that he will not have to deal with Emrick, he will be physically safe, and will not "be harassed with additional frivolous criminal complaints." (Am. Compl. at 32.)

17

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Ferretti I*, 2024 WL 4426145, at *6 (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008)). He must also show that equity balances in favor of granting relief, and that an injunction is in the public interest. *Id*. Even if a plaintiff can make this showing, he will still lack standing to seek injunctive relief when the future harm alleged is contingent, speculative, or highly conjectural. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983); *see also Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985); *Rosario v. Wetzel*, No. 23-966, 2024 WL 1677489, at *3 (W.D. Pa. Apr. 18, 2024) (for injunctive relief, the harm alleged "must not be speculative.") (quoting *Adams v. Freedom Forge Corp*., 204 F.3d 475, 487-88 & n.13 (3d Cir. 2000)). In *Lyons*, the United States Supreme Court stated that injunctive relief is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury'. . . . The speculative nature of [plaintiff's] claim of future injury requires a finding that this prerequisite of equitable relief has not been fulfilled." *Id*. at 111 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974).

While Ferretti's sexual assault claims will proceed past screening, his harassment claim will not, meaning he has not shown a likelihood of success on the claim related to the allegation that he is likely to suffer irreparable harm from future harassment. As the Court previously stated, the sexual assault claims describe one-time events and he does not allege a plausible basis upon which to conclude that this will repeat. Ferretti's contention that he will need to conduct police business and will live in Coplay when he is released from LCP, and thus may be again

subject to harassment is also entirely speculative. Accordingly, the request for a temporary restraining order will be denied.

## IV. CONCLUSION

Ferretti's claims that Emrick and Genovese sexually assaulted him, and his claim that Emrick violated the Fair Credit Reporting Act will be served for a responsive pleading. The balance of Ferretti's claim will be dismissed with prejudice since he has already had an opportunity to amend and further amendment would be futile. *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story"). An appropriate Order follows.

**BY THE COURT:**

**/s/ John Milton Younge**
_____
**JOHN MILTON YOUNGE, J.**